UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ALCIBIADES ALVAREZ BIRRUETE,

Petitioner,

v.

COREY FHUERE,

Respondent.

Case No. 6:24-cv-00822-AB

OPINION AND ORDER

Alcibiades Alvarez Birruete
18055689
Oregon State Penitentiary
2605 State Street
Salem, OR 97310-0505

Petitioner, *Pro Se*

Daniel T. Toulson
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301-4096

Attorney for Respondent

## INTRODUCTION

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging his state-court convictions for three counts of First-Degree Sodomy. For the reasons that follow, the Petition (ECF No. 1) is denied.

## BACKGROUND

### I. Factual Background and Trial Court Proceedings

In the Fall of 2008, Petitioner married Amanda Alvarez and began living with her and her children. Tr. 410-11.[1] Shortly after, Ms. Alvarez began working nights and would often arrange for a friend or neighbor to come to the house and watch her children, including her then-seven-year-old daughter, TM, even if Petitioner was also at home. *See* Tr. 414-21.

Around this time, Petitioner began sexually assaulting TM while Ms. Alvarez was at work. Tr. 25-27, 32. When this happened, Petitioner would get TM from her bedroom or the living room, bring her to the parents' bedroom, take her clothes off, take his own clothes off, and rape or anally sodomize her. Tr. 32-38, 47-55. TM recalled that she would scream for help, but Petitioner would cover her mouth. Tr. 106-07. Afterward, Petitioner would clean her, put her clothes back on, tell her not tell anyone and send her back to bed. Tr. 39, 53-54.

TM recalled that the assaults happened more than three times, that it was painful, and that Petitioner would ejaculate. Tr. 50, 53-54. TM recalled that she once told her mother what Petitioner was doing, but her mother did not believe her. Tr. 41-42. TM also, at some point, told a friend who lived in the apartment below hers. Tr. 42.

---

[1] Citations to the Trial Transcript refers to the original transcript pagination number at the right corner of Respondent's Exhibit Number 103 (ECF No. 21-1).

When TM was in fourth grade, she told Petitioner to stop, ran out of the room back to her room, and locked the door. Tr. 56-58. Petitioner did not sexually assault her again. Tr. 58.

When TM was 13, she told another friend that Petitioner had raped her. Tr. 61, 68-69. On December 5, 2014, the friend's mother contacted the middle school counselor, Lindsey Kane. Tr. 110. She was concerned about an interaction she witnessed between TM and Ms. Alvarez. Tr. 110, 116. Ms. Kane called TM to the office at school to talk. Tr. 112. Ms. Kane asked if TM "felt safe at home," and TM started to cry, said that she didn't like being around Petitioner because he raped her and described the abuse. Tr. 112-14. Ms. Kane called the police and Child Protective Services to report the disclosure. Tr. 71, 115

That afternoon, TM met with several individuals: another middle school counselor, a Child Protective Services Worker, and Clackamas County Sheriff's Deputy Jonathan Lee. Tr. 143-44. TM disclosed the abuse and wrote a statement. Tr. 146-52. Deputy Lee went to TM's home and spoke with Petitioner and Ms. Alvarez. T. 154-56. Petitioner denied the abuse and suggested that TM was mad because the family was moving. Tr. 159-60. TM underwent a medical examination and gave a video-recorded forensic interview at the Children's Center, a child advocacy center. Petitioner was arrested and charged with three counts of Sodomy in the First Degree. Resp't Ex. 102.

In April 2016, Petitioner waived his right to a jury trial and elected to proceed with a bench trial in April 2016. Resp't Exs. 120. TM, who was then fourteen years old, testified about the abuse. Tr. 25-108. The recording of TM's forensic interview was played for the court. Tr. 211-46. Neighbors and a family friend testified that they often provided childcare for Ms. Alvarez when she worked overnight. *See e.g.* Tr. 327-33, 368-73, 384-92. Ms. Alvarez testified that she never left TM alone in Petitioner's care, and that there were always other older children or adult women

around. *See e.g.* Tr.412, 416-22, 424, 426-27. She testified that TM never disclosed any abuse to her, and she never saw signs of abuse on TM's body. Tr. 423, 427-29.

In his closing argument, defense counsel highlighted TM's delayed disclosure and inconsistencies in her testimony. Tr. 509-12. Counsel argued that there was no physical evidence of abuse, and no witness corroborated TM's story. Tr. 517-18.

The court ultimately found Petitioner guilty on all three counts and sentenced him to the mandatory minimum sentence of 300 months in prison on each of the three counts, with the sentences to run concurrently. Tr. 519, 529-30; Resp't Ex. 101.

## II. Direct Appeal and Post Conviction Relief

Petitioner filed a direct appeal, raising a single assignment of error based on Oregon evidence code. Resp't Ex. 105. The Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 107-109.

Next, Petitioner filed for post-conviction relief ("PCR"). Shortly after Petitioner filed his *pro se* PCR Petition, the Supreme Court issued its decision in *Ramos v. Louisiana*, 590 U.S. 83 (2020), holding that a state jury must be unanimous to convict a criminal defendant of a serious offense. With the assistance of the counsel, Petitioner ultimately proceeded on a Second Amended PCR Petition that included three claims of ineffective assistance of counsel:

> First Specification – Erroneous Advice Regarding Waiving the Right to Trial by Jury
> Second Specification – Failure to Effectively Cross Examine Witness – Records
> Third Specification – Failure to Effectively Cross Examine Witness - Threat

*See* Resp't Ex. 116. With respect to his first claim, Petitioner argued:

> At the time of Petitioner's trial-level proceedings, any lawyer exercising reasonable skill and judgment representing him would have advised Petitioner to go to jury trial, understanding that Oregon's non-unanimous jury rule was likely to be found unconstitutional by the United States Supreme Court, thereby entitling Petitioner to relief from his convictions.

*Id*. at 4. The PCR court denied relief in a written decision. Resp't Ex. 141.

Petitioner appealed the PCR court's denial of his first claim for relief, that his "trial counsel was ineffective for failing to ensure his waiver of jury was knowing, voluntary, and intelligent in light of possible argument that a nonunanimous verdict would be unconstitutional." Resp't Ex. 143 at 8. The Oregon Court of Appeals affirmed in a nonprecedential memorandum opinion, relying on precedent holding that a criminal defense attorney is not ineffective for failing to foresee *Ramos*. *Birruete v. Fhuere*, 329 Or. App. 304, 305, 2023 WL 8253717, at *1 (2023) (citing *Aaron v. Kelly*, 325 Or. App. 262, 266, *rev den*, 371 Or. 333 (2023) and *Smith v. Kelly*, 318 Or. App. 567, 569 (2022), *rev den*, 370 Or. 822 (2023)); Resp't Ex. 146. Petitioner sought review from the Oregon Supreme Court, which was denied. Resp't Exs. 147, 148.

## III. Federal Habeas Corpus Petition

Petitioner filed a *pro se* habeas corpus petition in this Court raising the following grounds for relief:

> **GROUND ONE:** The trial court erred when it admitted testimony about adults' perception of pain over defendant's objection that pediatric nurse practitioner Gabrelle Peterson was not sufficiently qualified as an expert on that topic.
>
> **GROUND TWO**: Ineffective Assistance of Trial Counsel in the following particulars:
>
> (1) Erroneous Advice Regarding Waiving the Right to Trial by Jury
>
> (2) Failure to Effectively Cross Examine Witness – Records
>
> (3) Failure to Effectively Cross Examine Witness – Threat
>
> (4) Failure to attempt to impeach testimony of detective who had threatened Petitioner's wife
>
> (5) Failure to present testimony or other evidence that detective had destroyed evidence on Petitioner's phone that would have impeached the testimony of the alleged victim

(6) Failure to object to testimony of witnesses that contradicted testimony of Petitioner's wife that was critical to Petitioner's defense

(7) Failure to object to or impeach testimony of detective who testified with regard to Petitioner's wife's statements to the detective about her work schedule in regard to her statement that Petitioner could not have committed the crimes alleged

(8) Failure to properly question Petitioner's wife with regard to her assertion that she knew that Petitioner had not committed the crimes alleged and why she knew it

(9) Erroneously convincing Petitioner to accept bench trial when Petitioner wanted jury trial

(10) Failure to assert that State must prove the element of forcible compulsion

(11) Failure to object when the District Attorney asked Petitioner's wife a second time a question that the court had previously ordered stricken from the record

(12) Failure to object to impermissible vouching by an expert witness

(13) Failure to object to State's assertion about the alleged victim's lack of sexual experience

(14) Failure to object to or impeach testimony of detective witness who claimed that Petitioner had made statements to him that Petitioner said were not made

(15) Failure to object to or impeach testimony of alleged expert who testified based solely on what she had read, without any clinical training or experience in the subject.

*See* Pet. at 3-4 (ECF No. 1).

Respondent argues that Ground One is not cognizable, and that Ground One and Subclaims 2 through 15 of Ground Two are procedurally defaulted without excuse. *See* Resp. (ECF No. 19); Reply (ECF No. 33). Respondent argues that the state court decision denying relief on Subclaim 1 of Ground Two was not objectively unreasonable. *Id*. Respondent urges the Court to deny relief on all of Petitioner's claims.

## DISCUSSION

### I. Exhaustion and Procedural Default

#### *A. Legal Standards*

##### i. Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). If a petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S.

152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

i. Excuse for Procedural Default

A procedural default may be excused if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). "Cause" is something that "cannot be fairly attributable" to a petitioner, and a petitioner must show that this "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citation and internal quotation marks omitted). External factors include obstacles such as "a showing that the factual or legal basis for a claim was not reasonably available" or that "interference by officials . . . made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal citations omitted). In the habeas-corpus context, a fundamental miscarriage of justice occurs when a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, *v. Delo*, 513 U.S. 298, 327 (1995); *Smith v. Baldwin*, 510 F.3d 1127, 1137-38 (9th Cir. 2007).

Traditionally, the performance of PCR counsel could not be used to establish cause and prejudice to excuse a procedural default. *Coleman*, 501 U.S. at 753-54 (only the ineffective assistance of constitutionally required counsel constitutes cause); *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987) (there is no constitutional right to counsel in a PCR proceeding). However, in *Martinez*, the Supreme Court found it "necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse procedural default." 566 U.S. at 9. It concluded, "[i]nadequate assistance of

counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*.

In order to establish cause to excuse default pursuant to *Martinez*, a petitioner must first show that the underlying claim of ineffective assistance of trial counsel is substantial insofar as it has "some merit." 566 U.S. at 14. Next, a petitioner must demonstrate that the PCR attorney was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to raise the claim. The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 686-687. Second, the petitioner must show that counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one which is sufficient to undermine confidence in the sentence petitioner received. *Id*. at 696.

*B. Petitioner's Procedurally Defaulted Claims*

i. Ground One

In Ground One, Petitioner argues that "[t]he trial court erred when it admitted testimony about adults' perception of pain over defendant's objection that [the witness] was not sufficiently qualified as an expert." Pet. at 3. Petitioner concedes that this claim is procedurally defaulted. Pet'r Reply at 3 (ECF No. 28). He asks the Court to excuse the default because it "was due to the failure of appellate counsel to present the claim in federal terms," and asserts that he "relied entirely on the expertise of the appointed appellate attorney to present the claims on appeal." *Id*. at 3-4.

To the extent Petitioner seeks to excuse his procedural default because appellate counsel failed to pursue this claim on direct appeal, *Martinez* does not apply to claims involving the alleged errors of appellate counsel. *Davila v. Davis*, 582 U.S. 521, 528-530 (2017). Moreover, Petitioner fails to demonstrate that his appellate counsel erred by declining to raise this claim, or that he was prejudiced by any such failure.

Additionally, even if Petitioner could excuse his default, he fails to allege a violation of federal law. Petitioner's argument on direct appeal was limited to and based on Oregon's evidence code, Oregon state court cases interpreting the relevant rules of that code, and the Oregon Constitution. *See* Resp't Ex. 105. To the extent Petitioner is now attempting to assert that the trial court violated clearly established federal law by admitting the testimony, he failed to present *that* federal claim to any state court. Because Ground One is based on state evidentiary law, it is not cognizable.

For all these reasons, habeas relief is denied.

ii. Subclaims 2 through 15 of Ground Two

a. Petitioner's Request for an Evidentiary Hearing

In Subclaims 2 through 15 of Ground Two, Petitioner alleges several claims of ineffective assistance of counsel. Pet. at 4-6. Petitioner concedes that these claims are procedurally defaulted. Pet'r Reply at 3-7. In his Reply, he appears to request or argue that he is entitled to an evidentiary hearing to "present evidence that contradicts the State's version of events that was not presented to the trial court due to Petitioner's trial counsel's ineffective assistance." *Id*. at 2.

Petitioner seeks to depose Detective Kyser about his understanding of Ms. Alvarez's work schedule (relating to Subclaim 2), explaining:

> *The evidence in support of Petitioner's argument that his trial counsel was ineffective in this regard would be a deposition of the detective to simply present*

> *him with Petitioner's wife's work schedule and let him explain whether or not based on his understanding of that schedule Petitioner's wife could have been home,* ***as she testified that she was,*** *at the time the events were alleged to have occurred that are the basis for the charges against Petitioner. Both Petitioner and his wife testified at trial that she was at home at the time the events were alleged to have occurred,* ***and nothing happened****. The detective claimed in his testimony that they must be lying because she was at work at the time. Petitioner claims the detective did not understand the work schedule well enough to know whether or not his wife was working on the night in question. Petitioner's trial counsel did not effectively cross-examine the detective to determine one way or another whether or not he understood the work schedule, which left it in the mind of the fact-finder that the detective had evidentiary support for his assertion, when in fact he did not, because he did not even understand the work schedule he claimed supported his accusation.*

Pet'r Resp. at 4 (ECF No. 34) (emphasis in original). Petitioner also seeks to depose Detective Kyser about alleged threats he made to Ms. Alvarez (relating to Subclaims 3, 4, and 7), evidence on Petitioner's phone that he allegedly destroyed (relating to Subclaim 5), and statements that he alleged Petitioner made to him (relating to Subclaim 14). *See id*. at 4-5. Petitioner also seeks to depose Ms. Alvarez, "to allow her to explain why she is sure that Petitioner did not commit the crimes" (relating to Subclaim 8). *Id*. at 5.

Petitioner's assertion that developing evidence here will "contradict the State's version of events" is insufficient to justify his request for an evidentiary hearing. *See Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002) (concluding that the District Court had properly denied petitioner's request for an evidentiary hearing because petitioner had "failed to show what more an evidentiary hearing might reveal of material import"). This Court otherwise cannot consider any evidence developed for Petitioner's claims unless one of the exceptions in § 2254(e)(2) applies in his case, and Petitioner has not demonstrated that those exceptions apply.[2] Accordingly, any request for an evidentiary hearing is denied.

---

[2] The Antiterrorism and Effective Death Penalty Act of 1996 restricts a federal habeas court's consideration of evidence developed outside the state-court record:

b. Subclaims 2 and 3

In Subclaims 2 and 3, Petitioner argues that trial counsel was ineffective for failing to effectively cross-examine Detective Kyser about Ms. Alvarez's work schedule (Subclaim 2) and for failing to cross-examine Detective Kyser's about his alleged attempt to coerce Ms. Alvarez into coming for an interview (Subclaim 3). Pet. at 4. As noted, Petitioner concedes that these claims are procedurally defaulted but urges the Court to excuse his default because PCR appellate counsel was at fault for failing to fairly presenting these claims to the state appellate courts. Pet'r Reply at 3-7. Petitioner states he "was wholly reliant on the appointed appellate counsel to adequately and effectively present the claims included in the PCR petition." *Id*. at 7.

Again, *Martinez* does not apply to claims involving the alleged errors of appellate counsel. *Davila*, 582 U.S. at 528-530. Petitioner again fails to demonstrate that PCR appellate counsel erred by declining to raise these claims, or that he was prejudiced any such failure. Accordingly, Petitioner cannot excuse his procedural default of Subclaims 2 and 3, and habeas relief is denied.

---

> If [a habeas petitioner] has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In *Shinn v. Ramirez*, 596 U.S. 366 (2022), the Supreme Court held that, for procedurally defaulted claims not adjudicated on the merits in state court, "a federal court may not hold an evidentiary hearing – or otherwise consider new evidence," regarding either the question of cause and prejudice relative to a procedural default or the merits of the claim – unless the "stringent requirements" of Section 2254(e)(2) are met. 596 U.S. at 382-91.

c. Subclaims 4 through 15

In Subclaims 4 through 15 of Ground Two, Petitioner raises several claims of ineffective assistance of counsel. *See* Pet. at 4-6. Petitioner presented these claims to the PCR court in a motion brought pursuant to *Church v. Gladden*, 244 Or. 308 (1966). Resp't Ex. 114. The PCR court denied the motion as to these claims, *see* Resp't Exs. 115, 139, and Petitioner did not raise them on PCR appeal. Petitioner concedes the claims are procedurally defaulted, but explains that he believed that he had fairly presented the claims to the highest state court level available to him. Pet'r Reply at 5. He asks the Court to excuse his failure to exhaust these claims "on the basis that due to no fault of his own Petitioner was not aware of the process that he was required to follow in order to fully exhaust them." *Id*.

It is well established that a *Church* motion "does not present claims in a procedural context in which the PCR court can rule on their merits." *Fairly v. Bowser*, 2022 WL 18231560 *6 (D. Or. Jun. 14, 2022), *adopted by* 2023 WL 157786 (Jan. 10, 2023). Indeed, "the purpose of a proper *Church* motion is to notify the post-conviction court that counsel has failed to raise certain grounds for relief and *to ask the court to either replace counsel or instruct counsel* to rase those grounds for relief." *Bogle v. State*, 363 Or. 455, 471 (2018) (emphasis in original). The inquiry in a *Church* motion is whether PCR counsel is performing reasonably, not "whether the grounds for relief that petitioner wants to raise are legitimate." *Id.* at 473.

To establish "cause" to excuse his default, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A factor is external to the defense if it "cannot fairly be attributed to" the prisoner. *Coleman,* 501 U.S. at 753. Petitioner's own misunderstanding of the law does not constitute cause to excuse his procedurally defaulted claims.

Because Petitioner cannot excuse his procedural default of Subclaims 4 through 15, habeas relief is denied.

## II. The Merits

### *A. Legal Standards*

#### i. Deference to State-Court Decisions

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id*. at 410. When applying these standards, the federal court should review the "last reasoned decision" by a state court that addressed the issue. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

ii. Ineffective Assistance of Counsel

The Sixth Amendment provides defendants with the right to assistance of counsel in all criminal prosecutions, which implies the right to effective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 138 (2012). To establish a claim of ineffective assistance under *Strickland*, a habeas petitioner must satisfy a two-pronged test. First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. 466 U.S. at 686. Such a showing requires the petitioner to overcome a strong presumption that the challenged conduct falls within the "wide range of reasonable professional assistance; that is the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689. The first prong thus is satisfied only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*. at 687.

Second, a petitioner must demonstrate prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. Therefore, it is not enough if counsel's errors had only "some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must have been "so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." *Id*. In making the prejudice determination, the court must "consider the totality of the evidence before the judge or jury." *Id*. at 695. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

/ / /

*B. Subclaim 1 of Ground Two*

In Subclaim 1 of Ground Two, Petitioner argues that trial counsel was ineffective for advising him to "waive his right to trial by jury in favor of a bench trial rather than risk conviction by a non-unanimous jury." Pet. at 4. Petitioner asserts that trial counsel was aware of but failed to advise Petitioner that "the practice of allowing non-unanimous jury verdicts was being challenged." Pet'r Reply at 9. He argues that trial counsel "should have advised Petitioner of this fact, regardless of whether or not he anticipated anyone ever prevailing on the challenge." *Id*. He explains:

> Without the information that non-unanimous jury verdicts were being challenged, and that if he chose to take his case to a jury and was found guilty by a non-unanimous verdict he would have a viable challenge to his conviction, Petitioner was left without very important information that very well could have persuaded him to take his case to a jury, regardless of any other articulable reasons for waiving his constitutional right to a jury trial.

*Id*. at 10. Petitioner raised this issue in his PCR proceedings. *See* Resp't Exs. 116 at 3-4; 143 at 10-12.

i. Relevant Background and State Court Proceedings

The trial court judge conducted the following colloquy with Petitioner on the record immediately before his trial began:

> THE COURT: . . . . Mr. Birruete, I'm being handed what's called a waiver of right to a jury. This document indicates what your rights are in terms of whether or not you want the Court to consider the evidence, or if you'd like the jury. In a case of this nature you wouldn't have – normally have the right to have a 12 person jury sitting here hearing the evidence. They would be represented as of the community, and they would determine whether or not the State had met their burden. By signing this waiver of jury trial you're indicating that you'd like the Court to make that decision in lieu of a jury. Do you understand that sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions about the waiver of right to jury?

> THE DEFENDANT: No.
>
> THE COURT: Is this a voluntary decision on your part?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did anybody pressure you or promise anything to get you to give up your right to have a jury trial, instead have a court trial?
>
> THE DEFENDANT: No.
>
> THE COURT: This is -- looks like it was signed today and signed by your counsel. Do you have any additional questions about the waiver of right to jury trial?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. I will accept your waiver of jury trial finding it knowingly, voluntarily and intelligently made, and we will proceed to a court trial. . . .

Resp't Ex. 103 at 7-8.

In his PCR proceedings, Petitioner argued that trial counsel was ineffective for "advis[ing] Petitioner to waive his right to trial by jury in favor of a bench trial rather than risk conviction by a non-unanimous jury." Resp't Ex. 116 at 3. Petitioner argued:

> At the time of Petitioner's trial-level proceedings, any lawyer exercising reasonable skill and judgment representing him would have advised Petitioner to go to jury trial, understanding that Oregon's non-unanimous jury rule was likely to be found unconstitutional by the United States Supreme Court, thereby entitling Petitioner to relief from his convictions.

*Id*.

Petitioner also submitted a declaration, stating:

> Prior to going to trial, my attorney and I discussed whether I should have a jury trial or a trial to the court. I was adamant that I wanted a jury trial on this case despite the reservations of my attorney. He did tell me one fact that ultimately made me decide to have a court trial instead of a jury trial.
>
> The reason I decided to have a trial to the court is that my attorney told me that in Oregon, a jury could convict me of a charge without having a unanimous verdict. I was not comfortable putting my case in the hands of a jury that could convict me without having every juror agree that I was guilty. Especially with such serious

> charges. He did not tell me that it was likely that non-unanimous guilty verdicts would be declared unconstitutional in the future.
>
> Had I known that non-unanimous guilty verdicts would ultimately be declared unconstitutional, I would have proceeded to a jury trial despite my reservations.

Resp't Ex. 119 at 1-2. Petitioner also submitted his Wavier of Jury Trial. Resp't Ex. 120.

The PCR denied relief in a written opinion, making the following findings of facts and conclusions of law:

> A. Claim I: Petitioner alleges his jury waiver was not knowingly made because he was not advised by Counsel regarding *Ramos v. Louisiana*[,] 140 S. Ct. 1390 (2020), then pending in the Supreme Court.
>
> a. Petitioner's waiver of jury was on the record after thorough colloquy with the trial court. Petitioner demonstrated understanding of what he was doing, and the Court accepted the waiver (Ex. 112 and 120)[.]
>
> b. Petitioner's trial took place prior to the Supreme Court granting certiorari in *Ramos*. Petitioner argues that had he been told that there was a case that the Supreme Court might decide to entertain, which might result in the Court finding Oregon's system of non-unanimous juries unconstitutional, which in turn, if he had elected to try his case in front of a jury, made certain objections regarding the jury, had been found guilty by the jury by a non-unanimous verdict during a certain time period, he might be given a new trial, he would have not waived jury. This is not a credible contention, in view of the articulable reasons to waive jury in Petitioner's case.
>
> c. The Court accepts and incorporates herein the Background information contained in Defendant's trial memorandum herein. Petitioner's case involved serious allegations of child abuse. Trial Counsel had sound tactical reasons for recommending that Petitioner waive jury of which Petitioner was fully advised. Trial Counsel was not deficient for failing to discuss *Ramos* issues with Petitioner or in any aspect of his handling of the jury waiver.
>
> d. Petitioner's claim fails both factually and legally.

Resp't Ex. 141 at 1-2.

Petitioner appealed the PCR court's denial of this claim, Resp't Ex. 143, and the Court of Appeals affirmed in a nonprecedential memorandum opinion:

> Petitioner waived his right to a jury trial in 2016 and proceeded to a bench trial, where the trial court found him guilty of the three charges. In 2021, after the United States Supreme Court's 2020 decision in *Ramos v. Louisiana*, 590 U.S. [83], 140 S. Ct. 1390, 206 L Ed 2d 583 (2020), petitioner filed this post-conviction proceeding. He seeks relief from his 2016 convictions on the ground that his criminal trial counsel rendered constitutionally inadequate and ineffective assistance of counsel, in violation of Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, petitioner alleges that his trial counsel performed deficiently by not advising him that Oregon's nonunanimous jury rule was likely to "be declared unconstitutional in the future." Had he known that was the case, petitioner continues, he would have proceeded to a jury trial despite his reservations. Petitioner's argument is foreclosed by our recent case law on that issue. *Aaron v. Kelly*, 325 Or App 262, 266, 528 P.3d 1215 (2023) (trial counsel not inadequate or ineffective in 2017 for failing to foresee *Ramos*); *Smith v. Kelly*, 318 Or App 567, 569, 508 P.3d 77 (2022), *rev. den.*, 370 Or. 822, 525 P.3d 860 (2023) (trial counsel not inadequate or ineffective in 2015 for failing to foresee *Ramos*).
>
> Alternatively, petitioner seeks reversal on the basis that his jury trial waiver was not knowing, intelligent, and voluntary because he was not told that he had the right to a unanimous jury verdict. Petitioner did not preserve that argument, because he did not raise it in the post-conviction court. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]"). But even assuming that the alleged error was preserved, we reject it under *Peeler v. Reyes*, 328 Or App 110, 537 P.3d 206 (2023), which held that the petitioner's pre-*Ramos* waiver of right to a jury trial was knowing and intelligent, because the petitioner was correctly informed about the scope of his Sixth Amendment rights under the law in effect at the time of waiver.

*Birruete*, 329 Or. App. at 305-306; Resp't Ex. 146.

ii. Analysis

Given this record, the Oregon Court of Appeals' rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law.

In *Smith*, the court explained that "the obligation to exercise reasonable professional skill and judgment—under either constitution—does not encompass an obligation to augur an aboutface by the United States Supreme Court." 318 Or. App. at 569 (citing *Miller v. Lampert*, 340 Or 1, 15-16 (2006)). The court further explained:

> In this instance, when petitioner's case went to the jury, controlling United States Supreme Court precedent established that the Sixth and Fourteenth Amendments did not demand unanimous jury verdicts in criminal cases prosecuted in the state courts. *Apodaca v. Oregon*, 406 U.S. 404, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972). That rule of law had been steady and stable for 43 years. *Ramos*, 590 U.S. at —, 140 S. Ct. at 1428 n. 10 (Alito, J., dissenting) (listing cases in which the United States Supreme Court declined invitations to overrule *Apodaca*). Neither Article I, section 11, nor the Sixth and Fourteenth Amendments, required counsel to foresee that in five years the Court would decamp from the path it mapped nearly a half century earlier. *Miller*, 340 Or. at 16, 125 P.3d 1260 ("Counsel was not required to anticipate that two years later the United States Supreme Court would reverse course in *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)], interpret the Sixth Amendment and Due Process Clauses as the dissent had urged in *Almendarez-Torres* [*v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998)], and read its decision in *Almendarez-Torres* as establishing only a narrow exception to the new rule announced in *Apprendi*."); see *Ramos*, 590 U.S. at —, 140 S. Ct. at 1420 (Kavanaugh, J., concurring) ("[A]s to ineffective-assistance-of-counsel claims, an attorney presumably would not have been deficient for failing to raise a constitutional jury-unanimity argument before today's decision—or at the very least, before the Court granted certiorari in this case."); *see also, e.g., State v. Thompson*, 324 So. 3d 113, 119 (La. Ct. App. 1st Cir. 2021) (rejecting claim that counsel was ineffective for not raising jury nonunanimity issue before decision in *Ramos*).

*Id*. at 569-70.

In *Aaron*, the court applied the reasoning in *Smith* to hold that that the petitioner had failed to demonstrate his counsel performed deficiently by not advising him, before his 2017 trial, that *Apodaca* might be overturned. 325 Or. App. at 266. The court stated:

> [N]othing at the time of petitioner's trial would have put trial counsel on notice that the Supreme Court would abandon *Apodaca*. All signs pointed to the contrary—the Supreme Court was denying certiorari in cases asking it to take up the issue, with not a single justice dissenting. *Ramos*, 590 US at —, 140 S Ct at 1428 n 101 (Alito, J., dissenting) (listing cases in which the United States Supreme Court declined invitations to overrule *Apodaca*, including cases in 2013, 2014, 2017, and 2018).

*Id*. at 566.

The Oregon Court of Appeals' application of the same reasoning in Petitioner's case is not objectively unreasonable. Trial counsel's performance did not fall below an objective standard of reasonableness where, at the time of Petitioner's 2016 trial, nothing would have put trial counsel

on notice that the Supreme Court was likely to find Oregon's non-unanimous jury rule unconstitutional. "*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms." *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004) (citing *Strickland*, 466 U.S. at 690); *see also Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (lawyers not required to anticipate decisions, and conduct must be evaluated at the time of that conduct).

Accordingly, Petitioner is not entitled to habeas corpus relief on Subclaim 1 of Ground Two and the Petition is denied in its entirety.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (ECF No. 1) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

10/02/2026
DATE

Amy M. Baggio
United States District Judge